UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN LANGHOFF, ET AL. | CIVIL ACTION |
| VERSUS | NO. 09-7350 |
| UNITED STATES OF AMERICA | SECTION "A"(2) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for trial before the Court, sitting without a jury, on February 23, 2011. Following the close of all evidence, the Court took the matter under advisement and instructed counsel to submit their post-trial memoranda on or before March 18, 2011.

Having now considered the pleadings, evidence offered at trial, arguments of counsel, and applicable law, the Court renders its Finding of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). To the extent certain findings of fact are more appropriately classified as conclusions of law, they should be so construed. To the extent certain conclusions of law are more appropriately classified as findings of fact, they should be so construed.

## FINDINGS OF FACT

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq., ("FTCA") resulting from a collision

1

between a United States Postal Service ("USPS") truck, then being driven by USPS employee Emily Marie Robinson Matthews, and a Ford van driven by plaintiff John Langhoff.  At all times pertinent herein, Matthews was acting within the course and scope of her federal employment with the USPS.

On March 28, 2008, Langhoff and Matthews were driving West on Chappelle Street toward Canal Boulevard in New Orleans.  Matthews' USPS truck was in front of Langhoff's van.  Both vehicles were heading toward the intersection of Chappelle and General Diaz Street.

Matthews had been delivering mail on the north side of Chappelle Street but had additional deliveries to make on the south side of Chappelle.  Typically, Matthews would stop on Chappelle Street just prior to the intersection with General Diaz, back into a nearby driveway, and turn her USPS vehicle around (driving east on Chappelle Street) to make deliveries on the south side of Chappelle.  The steering wheel in the USPS truck was located on the right-hand side.

Matthews had stopped her vehicle at the corner of Chappelle Street at the intersection with General Diaz because she intended to back into a nearby driveway as was her normal routine.  But Langhoff's van was behind Matthews, which prohibited her from backing into the driveway.  Matthews' truck prevented Langhoff from going forward and he honked his horn at Matthews because she

was not moving.

Unable to back into a driveway, Matthews decided to make a left-hand u-turn in the intersection of Chappelle and General Diaz Streets.  Matthews turned on her left turn signal before attempting this maneuver.  Langhoff's van collided with Matthews' USPS truck after Matthews began turning her USPS vehicle to the left, as Langhoff was proceeding into the intersection.  The photographs of the vehicles after the accident support Langhoff's contention that he never left his lane of travel on Chappelle Street (Exh. 5-1).

The Court does not credit Langhoff's contention that Matthews turned all the way right onto General Diaz Street and had completely cleared the lane of travel on Chappelle Street.  The Court does not find it plausible that the postal truck had completely left Langhoff's field of vision.

The accident was not a T-bone-type collision but rather a shallow-angle impact.  Matthews hit Langhoff when she was in the early stages of making the turn.

The Court likewise does not credit Matthews' assertion that she attempted the u-turn without first pulling her vehicle to the right into the intersection, at least to some degree, in order to give ample room to complete the turn, even if the turning radius of the postal truck would have allowed Matthews to complete the turn from her lane of travel.

At trial, Matthews twice stated that she was pulled to the right when she started the u-turn maneuver so she did not initiate the move from the travel lane of traffic as would be the case with a simple left-hand turn. Of course if Matthews had been pulled all the way over to the right then she likely would not have been blocking the lane of travel and Langhoff would have had no reason to honk at her. The Court is more inclined to believe that Matthews pulled to the right and veered back into Langhoff's path.

There was insufficient evidence that a large raised crack in the Chappelle / General Diaz intersection, which would have deterred Matthews from maneuvering to the right, existed in 2008 when this accident occurred.

Joseph Johnson was an eye witness to the accident and the parties submitted his testimony via deposition. (Exh. 16). Johnson is certain that Matthews was driving on General Diaz Street when she hit Langhoff's van--a contention that both parties to the accident deny. Johnson's testimony supports the conclusion that Matthews had pulled to the right before making the turn.

The New Orleans Police Department ("NOPD") was called to the scene. Matthews was cited for improper turning, a violation of 154.536.[1] (Exh. 1-4). Langhoff did not receive a citation.

---

[1] Defendant's expert points out that this ordinance does not exist and that the officer likely intended to write 154.436. (Gillen rpt. at 2).

Matthews did not contest the charge and paid the citation out of court. (Exh. 3).

Matthews had been a mail carrier for three to four months when the accident occurred. She had been delivering mail along this route for approximately two months before the accident.

Langhoff sustained property damage to his vehicle in the amount of $2,678.51 as a result of this accident. (Exh.6).

Langhoff did not perceive that he had sustained any physical injury until a day or so after the accident when his neck and lower back started to bother him. Langhoff initially sought medical treatment in the form of heat packs and electrical stimulation. The neck soreness resolved but the ache in his back did not.

Langhoff treated with Dr. Bradley J. Bartholomew, a neurological surgeon, beginning in 2009. Langhoff presented with complaints of continuing lower back pain, especially when standing. (Exh. 10-11). On September 16, 2009, Dr. Bartholomew performed an L5-S1 percutaneous discectomy. (Exh. 10-15). This procedure takes 1-1½ hours. This procedure is not as invasive as a spinal fusion but it does require that the patient be placed under general anesthesia.

Langhoff has degenerative disc abnormalities that are not related to this accident. However, this accident necessitated the lumbar discectomy performed by Dr. Bartholomew. Defendant's

5

expert orthopaedic surgeon, Dr. Gordon P. Nutik, could not refute that Langhoff's back condition was at least aggravated by the accident. (Exh. 14-4). It usually takes about six weeks to obtain relief when the discectomy procedure is successful.

Langhoff sustained past medical expenses of $33,708.00 as a result of this accident.

The evidence was insufficient to establish that any continuing lower back pain is causally related to the accident. Again, Langhoff has degenerative spondylosis and other disc abnormalities that occur over time with age and lifestyle factors and which are likely to worsen with time. Langhoff is not entitled to damages for future pain and suffering, disability, or loss of enjoyment of life. Langhoff is likewise not entitled to future medical expenses.

Langhoff has not reported any income for the past twelve years, including the ten years prior to the accident. Langhoff is capable of returning to work at a light or medium capacity with some restrictions.

Langhoff and his spouse, plaintiff Deborah Langhoff, have been married for 32 years. The Langhoffs have enjoyed a strong marital relationship both before and after the accident. In the aftermath of the accident, Langhoff refrained from social activities that the spouses used to enjoy together and their sexual relationship was adversely affected.

## **CONCLUSIONS OF LAW**

Under the FTCA the United States is liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. <u>U.S. v. Orleans</u>, 425 U.S. 807, 813 (1976); 28 U.S.C. §§ 1346(b), 2674. The United States's liability for tort claims is according to the law of the state where the alleged tortious action occurred. 28 U.S.C. § 2674; <u>Owen v. U.S.</u>, 935 F.2d 734, 737 (5th Cir. 1991). The alleged tortious action in this case occurred in New Orleans, Louisiana so Louisiana's substantive tort law applies in this case.

Under Louisiana law, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315.

It is well-settled that a u-turn is one of the most dangerous maneuvers in which a motorist can indulge and that he must make sure that such a maneuver can be accomplished without danger to traffic to his left or rear. <u>Cory v. Emp. Mut. Liab. Ins. Co.</u>, 267 So. 2d 761, 764-65 (La. App. 2nd Cir. 1972) (<u>citing</u> <u>Booth v. Aetna Cas. & Sur. Co.</u>, 220 So. 2d 188 (La. App. 1st Cir. 1969)).

No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. La. Rev. Stat. Ann. § 32:104(A) (West 2002).

A left-turning motorist has a strong duty of care. <u>Lennard</u>

7

v. Champaign, (917 So. 2d 1134, 1137 (5th Cir. 2005) (quoting Gryder v. Jackson, 739 So. 2d 246, 249 (La. App. 2nd Cir. 1999)). The duty includes properly signaling an intention to turn left and keeping a proper lookout for both oncoming and over-taking traffic in order to ascertain that the left turn can be made with reasonable safety. Id. (citing Agency Rent-A-Car, Inc. v. Hamm, 401 So. 2d 1259 (La. App. 1st Cir. 1981). The left-turning motorist is required not only to look to the left before turning but has a duty to see what should be observable. Id. (citing Hollier v. Gilder, 306 So. 2d 475 (La. App. 3rd Cir. 1975)). If the driver of a left-turning vehicle signals a left-hand turn then the turning driver only fulfills one-half of the requirement for making such maneuver for it remains incumbent upon him to look to his rear to see if the left-hand lane is clear before beginning his left turn. Id. (citing Kilpatrick v. Alliance Cas. & Reinsur. Co., 663 So. 2d 62 (La. App. 3rd Cir. 1995)).

The left-turning motorist has the duty to make certain that the turn can be made without danger to normal overtaking or oncoming traffic and he must yield the right of way to such vehicles. Gohres v. Dryer, 29 So. 3d 640, 645 (La. App. 1st Cir. 2009) (citing Lang v. Cage, 554 So. 2d 1312, 1316 (La. App. 1st Cir. 1989)).

Matthews failed to exercise the care and caution expected of drivers executing a u-turn in traffic or a left-hand turn.

Matthews knew when she began her maneuver that Langhoff was immediately behind her.  As noted above, she either began her turn from the far right-hand side near the curb or she pulled to the right in the intersection to execute the turn.  Matthews breached her duty to ensure that she could safely make the turn.  Matthews' duty was not discharged by the mere signaling of the intention to turn.  Matthews' negligence was a contributing cause of the accident and Plaintiffs' injuries.

The mere fact that a motorist received a citation and paid it, without also entering a guilty plea, does not establish fault. See Maricle v. Liberty Mut. Ins. Co., 898 So. 2d 565, 572-73 (La. App. 3rd Cir. 2005).

Every motorist has a duty to exercise reasonable care in the operation of his vehicle, which includes the duty to keep his vehicle under control and to maintain a proper lookout at all times.  Sullivan v. Murphy, 852 So. 2d 1277, 1282 (La. App. 2nd Cir. 2003).

Langhoff failed to exercise reasonable care in the operation of his vehicle.  The testimony established that he was clearly frustrated and impatient with Matthews as she blocked his path. Langhoff was within 1-2 feet of the USPS truck before Matthews started to move so Langhoff must have charged ahead as soon as the USPS truck began to move because if Langhoff had merely waited a few seconds then Matthews's intention to turn into the

intersection would have been clear to him and the accident could have been avoided.  Matthews used her left-turn signal but Langhoff failed to notice the signal and had he done so he surely would exercised more caution before pulling forward into the intersection.  Langhoff's negligence was a contributing cause of the accident and his injuries.

In an action for injury or loss the trier of fact shall determine the degree or percentage of fault of all persons found to have contributed to or caused that injury or loss.  <u>Stewart v. Barnett</u>, 942 So. 2d 674, 675 (La. App. 2nd Cir. 2006) (<u>citing</u> La. Civ. Code art. 2323).  The trier of fact will compare the relative fault of the parties in the assessment of liability.  <u>Id.</u> (<u>citing</u> <u>Thomas v. Sisters of Charity of the Incarnate Word</u>, 870 So. 2d 390 (La. App. 2nd Cir. 2004)).  If a person suffers injury or loss as the result partly of his own negligence and partly as a result of the fault of another person, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury or loss.  La. Civ. Code art. 2323(A).

The Court assigns 85 percent of the fault for the accident to Matthews and 15 percent of the fault to Langhoff.

The Court awards Langhoff general damages of $35,000.00 for the pain and suffering associated with the accident and undergoing the discectomy procedure.

The compensable elements of damage in a claim for loss of consortium include loss of society, sex, service, and support. Gradnigo v. La. Farm Bureau Cas. Ins. Co., 6 So. 3d 367, 376 (La. App. 3rd Cir. 2009) (quoting LeBlanc v. Acadian Ambulance Serv., Inc., 746 So. 2d 665, 684 (La. App. 3rd Cir. 1999)).

The Court awards Ms. Langhoff loss of consortium damages of $3,000.00, to be reduced by Langhoff's percentage of fault. LeBlanc v. Steptore, 723 So. 2d 1056, 1065 (La. App. 3rd Cir. 1998) (citing Bellard v. So. Cent. Bell Tele. Co., 702 So. 2d 695 (La. App. 3rd Cir. 1997)).

## CONCLUSION

Under the circumstances of this case, the Court concludes that Plaintiffs are entitled to an award of 1) medical expenses of $33,708.00, 2) general damages of $35,000.00, 3) property damage of $2,678.51, 4) $3,000.00 for Ms. Langhoff's loss of consortium, and 5) no damages for future medical expenses or lost wages and disability, for a total award of $74,386.51, to be reduced by Langhoff's 15 percent comparative fault.

The Clerk of Court is directed to enter judgment accordingly.

April 1, 2011

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE